MHN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION


PEDRO DIAZ,                          GEORGE M. MAROVICH

   PLAINTIFF,                        JUDGE PRESIDING

VS

JOHN SCHNEIDER, ET. AL.              NAN NOLAN

   DEFENDANTS.                       MAGISTRATE JUDGE

                                     CASE NO. 08-C-606

                                     08cv606

RECEIVED 7-30-2008
JUL 3 0 2008
MB
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT


AMENDED COMPLAINT

JURY TRIAL DEMANDED


I. JURISDICTION AND VENUE

1) THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983 TO REDRESS THE DEPREVATION, UNDER COLOR OF STATE LAW, OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES. THE COURT HAS JURISDICTION UNDER 28 U.S.C. SECTION 1331 AND 1334 (a)(3). PLAINTIFF SEEKS DECLATORY RELIEF PURSUANT TO 28 U.S.C. SECTION 2283 AND 2284 AND RULE 65 OF THE FEDERAL RULES.


II PLAINTIFF

2) PLAINTIFF, PEDRO DIAZ, IS AND WAS AT ALL TIMES MENTIONED A PRISONER OF THE STATE OF ILLINOIS AND IS CURRENTLY IN CUSTODY AT THE PONTIAC CORRECTIONAL CENTER IN PONTIAC, ILLINOIS.

## II. DEFENDANTS

3) Defendant Roger Walker Jr. is the Director of I.D.O.C. and is legally responsible for the overall operation of the I.D.O.C. and each institution under I.D.O.C.'s jurisdiction, including Stateville Correctional Center, where plaintiff's rights were violated. Defendant Walker is the final authority in the inmate grievance process.

4) Melody J. Ford is the liason of the I.D.O.C.'s Administrative Review Board and is responsible for making recommendations to the Director, to approve or deny inmate grievances.

5) Diedre Battaglia was the Warden at Stateville Correctional Center, and was legally responsible for the operation of Stateville C.C. and for the welfare of all inmates at Stateville C.C. and was responsible for the approval or denial of inmate grievances at Stateville.

6) Terry McCann is the Warden at Stateville and is legally responsible for the operation of Stateville C.C. and for the welfare off all inmates and for the approval or denial of inmate grievances. (Defendants Battaglia and McCann each held the position of Warden at Stateville during times mentioned in this complaint.)

7) Tammi Garcia is a Grievance Officer at Stateville C.C. and is responsible for investigating inmate grievances and making recommendations to the Warden to approve or deny inmate grievances.

8) Amy Workman is a Grievance Officer at Stateville C.C. and is responsible for investigating inmate grievances and making recommendations to the Warden to approve or deny inmate grievances.

9) Jerry Baldwin is a Counselor at Stateville C.C. and is resolving incidents, problems or complaints of inmates, prior to inmates utilizing the grievance process.

10) B. ___ Barnes is a Counselor at Stateville C.C. and is responsible for resolving incidents, problems or complaints of inmates, prior to inmates utilizing the grievance process.

11) Cleo Johnson is a Hearing Officer at Stateville C.C. and is responsible for conducting hearings and investigations of disciplinary reports and recommending disciplinary action related to those reports.

12) Marshall Hill is a Hearing Officer at Stateville C.C. and is responsible for conducting hearings and investigations of disciplinary reports and recommending disciplinary action.

13) _____ TURNER IS AN INVESTIGATOR FOR THE INTERNAL AFFAIRS DIVISION AT STATEVILLE C.C. AND IS RESPONSIBLE CONDUCTING INVESTIGATIONS INTO MISCONDUCT BY STAFF MEMBERS AT STATEVILLE C.C.

14) _____ ROSS IS A LIEUTENANT AT STATEVILLE C.C. AND IS RESPONSIBLE FOR SUPERVISING STAFF AND INMATES AT STATEVILLE.

15) _____ MEIR IS A LIEUTENANT AT STATEVILLE C.C. AND IS RESPONSIBLE FOR SUPERVISING STAFF AND INMATES AT STATEVILLE.

16) _____ BUTCHKOWSKI IS A LIEUTENANT AT STATEVILLE C.C. AND IS RESPONSIBLE FOR SUPERVISING STAFF AND INMATES AT STATEVILLE.

17) _____ BERKLEY IS A SERGEANT AT STATEVILLE AND IS RESPONSIBLE FOR SUPERVISING STAFF AND INMATES AT STATEVILLE.

18) JOHN P. SCHNEIDER IS A GUARD AT STATEVILLE AND IS RESPONSIBLE FOR THE CARE AND CONTROL OF INMATES AT STATEVILLE.

19) YEHUEST PARKER IS A GUARD AT STATEVILLE AND IS RESPONSIBLE FOR THE CARE AND CONTROL OF INMATES AT STATEVILLE.

20) _____ LARA IS A GUARD AT STATEVILLE AND IS RESPONSIBLE FOR THE CARE AND CONTROL OF INMATES AT STATEVILLE.

21) Cartwright is a guard at Stateville and is responsible for the care and control of inmates at Stateville.

22) Quintero is a guard at Stateville and is responsible for the care and control of inmates at Stateville.

23) The doctor at Stateville is responsible for providing adequate medical treatment to inmates at Stateville.

24) Each defendant is being sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under color of state law.

## IV FACTS

25) On March 11, 2007, plaintiff was exiting the meal serving area at Stateville when defendant Schnider ordered plaintiff to turn around and use a different exit.

26) Defendant Schnider, intentionally, blocked the doorway plaintiff was ordered to use, with his body in an intimidating manner.

27) Defendant Schnider and plaintiff made incidental contact while plaintiff was attempting to pass through the exit.

28) Defendant Schnider told Plaintiff "Don't ever fucking touch me again".

29) Plaintiff advised Defendant Schnider that it was Schnider who ordered Plaintiff to use the doorway and should not have been blocking the doorway.

30) Defendant Schnider ordered Plaintiff to "cuff-up".

31) Defendant Schnider radioed Defendant Lt. Ross and accused Plaintiff of assault.

32) Defendant Ross escorted Plaintiff to the disciplinary segregation unit.

33) Prior to being into the segregation unit, Defendant Ross forced Plaintiff to submit to drug testing.

34) Drug testing is not standard procudere to admission into segregation and failure to submit to drug testing results in a six month segregation sentence.

35) Two inmates who were being admitted into the segregation unit at the same time as Plaintiff, and who were both charged with possession of drugs and drugs and drug paraphernillia were not forced to submit to drug testing and were promptly admitted into the segregation unit.

36) After plaintiff submitted to -and passed- drug testing, plaintiff was still forced to remain in a small holding cell for approximately two hours.

37) Plaintiff was not served any dinner.

38) Defendant Lara escorted plaintiff to cell F-231.

39) The toilet in cell F-231 was broken and the bowl was filled with urine and feces.

40) The hot water in cell F-231 did not work.

41) The entire cell was filthy. (walls and floor covered with soot)

42) The cell was infested with roaches.

43) Plaintiff made numerous requests to defendants Mier, Berkley, Lara, Cartwright, Quintero and Butchkowski, to be moved into a cell with a working toilet.

44) Defendants Mier, Berkley, Lara, Cartwright, Quintero and Butchkowski ignored plaintiffs requests to be moved.

45) Plaintiff was forced to live with the stench of other persons human waste for six days.

46) Plaintiff was forced to sleep and even **EAT** all of his meals with the smell of human waste, for six days.

47) Plaintiff was denied any basic human need, i.e. soap, toothbrush, towel — for one week.

48) When plaintiff recieved a copy of the disciplinary report filed by defendant Schnider, plaintiff completed and returned the request for witnesses portion, requesting the adjustment committee view the survaliance tapes from the dining area to prove plaintiffs innocence.

49) When plaintiff appeared before the adjustment committee, defendants Johnson and Hill refused to permit plaintiff to present his defense.

50) Defendants Johnson and Hill failed to inform plaintiff of evidence favorable to him or statements of witnesses, i.e. a report filed by defendant Parker.

51) Defendants Johnson and Hill refused to grant plaintiff's request to present evidence in his defense, i.e. video survaliance of the dining area.

52) Defendants Johnson and Hill found plaintiff guilty of the false charges and recommended the plaintiff recieve 1) 3 months C-grade. 2) 3 months segregation, 3) 3 months revocation of

STATUTORY OR GOOD CONDUCT CREDIT, 4) 3 MONTHS COMMISSARY RESTRICTION AND 5) 6 MONTHS VISIT RESTRICTION.

53) WHILE PLAINTIFF WAS SERVING THE UNJUST SEGREGATION SENTENCE, HE FELL DOWN A FLIGHT OF STAIRS WHILE RETURNING TO HIS CELL, AFTER HIS WEEKLY SHOWER, AT APPROXIMATELY FIVE O'CLOCK.

54) PLAINTIFF'S HANDS WERE HANDCUFFED BEHIND HIS BACK AND HE WAS UNABLE TO PROTECT HIMSELF OR PREVENT HIS FALL.

55) PLAINTIFF WAS NOT ESCORTED DOWN THE STAIRS BY A STAFF MEMBER, AS IS STANDARD PROCEDURE.

56) DEFENDANTS LARA, CARTWRIGHT AND QUINTERO WERE 'RUNNING SHOWERS' AND WERE RESPONSIBLE FOR ESCORTING PLAINTIFF TO AND FROM THE SHOWER.

57) DEFENDANT QUINTERO WITNESSED PLAINTIFF FALL DOWN THE STAIRS, BUT OFFERED NO ASSISTANCE TO PLAINTIFF.

58) PLAINTIFF INFORMED DEFENDANTS MIER, BERKLEY, QUINTERO, CARTWRIGHT AND LARA THAT HE NEEDED MEDICAL ATTENTION FOR INJURIES TO HIS HEAD, SHOULDERS, FOREARMS, BACK AND WRISTS.

59) DURING EIGHT O'CLOCK 'COUNT' PLAINTIFF TIED A SHEET ACROSS THE FRONT OF HIS CELL TO PREVENT DEFENDANTS LARA AND

CARTWRIGHT FROM COUNTING AND INFORMED THEM PLAINTIFF WOULD NOT TAKE DOWN THE SHEET UNTIL HE WAS SEEN BY A PHYSICIAN.

60) AT APPROXIMATELY NINE P.M. PLAINTIFF WAS SEEN BY A "MED TECH" WHO RECOMMENDED PLAINTIFF BE SEEN BY A PHYSICIAN.

61) THE FOLLOWING DAY, PLAINTIFF WAS ESCORTED TO THE INMATE HEALTH CARE UNIT TO BE SEEN BY A DOCTOR.

62) AT THE HEALTH CARE UNIT, PLAINTIFF WAS TOLD THERE WAS A MEDICAL EMERGENCY INVOLVING A LEVEL-E (ESCAPE RISK) INMATE WHO WAS BEING TRANSPORTED TO AN OUTSIDE HOSPITAL BECAUSE THE INMATE HAD BEEN VOMITING FOR FOUR DAYS.

63) PLAINTIFF WAS INFORMED THAT THE DOCTOR DID NOT HAVE MUCH TIME FOR PLAINTIFF.

64) PLAINTIFF WAS FORCED TO REMAIN FULLY CLOTHED IN A JUMPSUIT, AND IN LEG SHACKLES AND A WAIST-CHAIN, THROUGHOUT THE ONE MINUTE "EXAM".

65) PLAINTIFFS CLOTHING AND RESTRAINTS PREVENTED THE DOCTOR FROM VIEWING AND EXAMINING PLAINTIFFS INJURIES.

66) PLAINTIFF WAS NOT GIVEN ANY MEDICATION FOR PAIN IN HIS HEAD, SHOULDERS, FOREARMS, BACK AND WRISTS, WHICH LASTED TWO WEEKS.

67) ALSO WHILE PLAINTIFF WAS SERVING THE UNJUST SEGREGATION SENTENCE, DEFENDANT ROSS CAME TO PLAINTIFFS CELL AND THREATENED TO RETALIATE AGAINST PLAINTIFF FOR PLAINTIFF HAVING FILED A GRIEVANCE AGAINST DEFENDANT ROSS, RELATED TO THE THE UNJUST DRUG TESTING.

68) INTERNAL AFFAIRS OFFICER (DEFENDANT) TURNER INVESTIGATED THE THREATS BY DEFENDANT ROSS.

69) DEFENDANT TURNER RELATED TO PLAINTIFF THAT HE - TURNER - KNEW DEFENDANT ROSS AND THAT DEFENDANT ROSS WAS JUST TRYING TO INTIMIDATE PLAINTIFF.

## V. EXHAUSTION OF REMIDIES

70) PLAINTIFF UTILIZED THE INMATE GRIEVANCE PROCESS AVAILABLE AT STATEVILLE - AND LATER SPRINGFIELD - TO ATTEMP TO RESOLVE/CORRECT THE VIOLATIONS OR RIGHTS, RAISED IN THIS CLAIM.

71) PLAINTIFF FILED A GRIEVANCE REGARDING THE FALSE DISCIPLINARY CHARGES, THE UNCONSTITUTIONAL HEARING AND THE UNJUST DISCIPLINARY ACTION IMPOSED; SEEKING RELEASE FROM SEGREGATION, EXPUNGEMENT OF THE DISCIPLINARY ACTION AND MONETARY RELIEF.

72) DEFENDANT BALDWIN RECIEVED THE GRIEVANCE BUT FAILED TO MAKE ANY ASSESSMENT OR RECOMMENDATION OF THE GRIEVANCE AND FORWARDED THE GRIEVANCE TO THE GRIEVANCE OFFICER.

73) Defendant Renata Glenn recommended plaintiff's grievance be denied.

74) Defendant Battaglia, without making an independent assessment of the information and evidence, concurred with the denial of the grievance.

75) Plaintiff appealed the denial of the grievance to the Administrative Review Board, which is part of the grievance process, and the due process afforded to inmates.

76) Defendant Melody J. Ford denied plaintiff's appeal and approved the unjust disciplinary ticket and sentence, stating that she was "reasonably satisfied" that the plaintiff committed the offense charged.

77) Defendant Walker, without making an independent assessment of the appeal, concurred with the denial of the appeal.

78) Plaintiff filed a grievance with defendant Baldwin which informed defendant Baldwin of the inhumane conditions and treatment of plaintiff, seeking release from segregation, disciplinary action against staff, and monetary relief.

79) Defendant Baldwin opinioned that, because Plaintiff was no longer in cell F-231 at the time Defendant Baldwin responded to the grievance, the housing concern had been addressed and the issue was resolved.

80) Plaintiff forwarded the grievance concerning the inhumane conditions to the grievance office.

81) Defendant Ali Workman agreed with Defendant Baldwin and denied the grievance as being "moot".

82) Defendant McCann, without making an independant assessment of the grievance, concurred with the denial of the grievance.

83) Plaintiff appealed the denial of his grievance to the Administrative Review Board, which is part of the due process afforded to inmates.

84) Defendant Ford opinioned there was no violation of of Plaintiff's rights and recommended the denial of the grievance.

85) Defendant Walker, without making an independant assessment of the appeal, concurred with the denial.

86) Plaintiff filed a grievance for failure to be protected from injury and failure to receive prompt and adequate medical treatment after being injured during the fall down the stairs, requesting 1) a dry area to dress after showering, 2) disciplinary action against staff, 3) a non-slip coating applied to the stairs, and 4) monetary compensation.

87) Defendant Baldwin spoke to defendants Mier, Berkley, Lara, and Quintero regarding plaintiff's grievance but made no recommendation regarding the grievance.

88) Plaintiff forwarded the grievance to the grievance office.

89) Defendant Workman denied plaintiff's grievance.

90) Defendant McCann, without making an independent assessment of the grievance, concurred in the denial.

91) Plaintiff appealed the denial of the denial of the grievance to the Administrative Review Board, which is part of the due process afforded to inmates.

92) Defendant Ford opinioned that the issue was addressed by the institution and denied plaintiff's appeal.

93) Defendant Walker, without making an independant assessment of the appeal, concurred in the denial.

## VI  LEGAL CLAIMS

94) Plaintiff realleges and incorperates by reference paragraphs 1 through 93.

95) Defendant violated plaintiff's due process rights by confineing him and sentencing him to a three month period of confinement in disciplinary segregation on the basis of false allegations and the conditions in which plaintiff was forced to endure were inhumane and caused physical and emotional harm to plaintiff.

96) Plaintiff's confinement in disciplinary segregation created an atypical and significant hardship on the plaintiff in relation to ordinary incidents of prison life in Stateville's general population where:

   a) Plaintiff was forced to spend 24 hours-a-day in a 6' x 12' cell, with another inmate.

   b) Plaintiff was forced to be handcuffed whenever leaving his cell.

C) PLAINTIFF WAS ONLY PERMITTED ONE 5 HOUR YARD PERIOD EACH WEEK IN A 20' x 40' AREA WITH TEN OTHER INMATES.

D) PLAINTIFF WAS DENIED WATER AND BATHROOM FACILITIES DURING YARD PERIODS.

E) INMATES URINATE AND DEFECATE ON THE YARD.

F) PLAINTIFF WAS ONLY PERMITTED ONE TEN MINUTE SHOWER PER WEEK.

G) PLAINTIFF WAS DENIED CONTACT VISITS.

H) PLAINTIFF WAS NOT PERMITTED TO ATTEND RELIGIOUS SERVICES OR OTHER PROGRAMS.

I) PLAINTIFF WAS FORCED TO EAT ALL OF HIS MEALS IN HIS CELL.

J) PLAINTIFF WAS DENIED CLEANING SUPPLIES.

K) PLAINTIFF WAS DENIED USE OF HIS AUDIO/VISUAL EQUIPMENT.

## COUNT 1

97) The chronology of events shows retaliation by defendants Schnider and Parker, against plaintiff, for exercising his right to free speech by peacefully informing defendant Schnider that Schnider should not have blocked plaintiff's path and caused the contact between plaintiff and defendant Schnider.

98) Defendants Schnider and Parker filed false and unjustified disciplinary charges and reports against plaintiff, which led to plaintiff's placement in segregation, in violation of plaintiff's right to due process.

99) Plaintiff has a liberty interest in avoiding his term in disciplinary segregation.

100) Defendants Johnson and Hill violated plaintiff's right to due process by failing to: 1) provide plaintiff with - or inform plaintiff of the statement by defendant Parker, 2) failing to allow plaintiff to present evidence in his defense i.e., video survaliance, 3) failing to allow plaintiff to speak in his own defense, which rendered the hearing constitutionally deficient.

101) Defendants Johnson and Hill approved an unjustified disciplinary ticket.

102) Defendants Baldwin, Glenn, Battaglia, Furo and Walker, denied plaintiff his right to due process by denying plaintiff's grievance seeking relief from the unjust confinement.

## COUNT 2

103) The chronology of events show retaliation against plaintiff, by defendant Ross, for plaintiff being accused of assaulting defendant Ross, in violation of plaintiff's right to be free from retaliation.

## COUNT 3

104) The chronology of events shows retaliation by defendants Mier, Berkley, Lara, Cartwright and Quintero, against plaintiff, by placing plaintiff in a cell with a broken toilet, for plaintiff being accused of assaulting defendant Schnider.

105) The conditions of plaintiff's confinement in segregation were inhumane and violated plaintiff's right to be free from cruel and unusual punishment.

106) Defendants Baldwin, Workman, Battaglia, Ford and Walker violated plaintiff's right to be free from cruel and unusual process and due process, by denying plaintiff's grievance seeking relief from the inhumane conditions.

## COUNT 4

107) Defendants Mier, Berkley, Lara, Cartwright and Quintero violated plaintiff's right to be free from cruel and unusual punishment, by failing to protect plaintiff from harm in fall and failing to provide plaintiff adequate medical care.

108) Defendants Baldwin, Workman, McCann, Ford and Walker denied Plaintiff's right to be free from cruel and unusual punishment and due process by denying Plaintiff's grievance seeking relief from the injuries caused to him.

## VII. Relief Requested

109) A declaration that the acts and omission described herein violated Plaintiff's rights under the constitution.

110) Compensatory damages in the amount of $50,000 against each defendant, jointly and severally.

111) Punitive damages in the amount of $100,000 against each defendant.

112) A trial by jury on all issues triable by jury.

113) A preliminary and permanent injunction ordering the defendants to record all inmate statements at disciplinary hearings, install non-slip coatings on all stairs at Stateville, make weekly inspections of all cells at Stateville, spray for insects at least once per month inside cells at Stateville, install bathroom facilities at Stateville's segregation yard.

114) ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

## VIII  VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

RESPECTFULLY SUBMITTED,

/s/ [signature]

PEDRO DIAZ #B46669
PLAINTIFF
P.O. BOX 99
PONTIAC, IL. 61764